### .ISAAC BEEDY *versus* DAVID M. MACOMBER.

Where the title to a chattel depends upon whether a prior sale by one of the parties to a third person was absolute or conditional, the declarations of that person, made against his own interest, and before he disposed of his title, are admissible to show the character of the sale.

A mortgager of chattels has such an interest in the mortgaged property, that his declarations, disparaging his title, may be proved by one who claims title against him and his vendee.

Whether the declarations of a former owner were made to prevent his creditors from attaching the property, or in good faith, is a question entirely for the jury.

TROVER for a horse.

It was admitted that the defendant bought the horse in question in 1855, and was the owner and possessor until August or September, 1858, when he sold or disposed of it to one Dakin. The evidence was conflicting, whether the defendant sold the horse to Dakin absolutely, or bargained to sell to him on certain conditions, retaining the title in himself. The question was put to the jury, and they returned a special verdict that the sale was unconditional.

The plaintiff had the horse of one Bachelder, in October, 1858, in exchange for another horse. Afterwards, on claim and representations of the defendant, the plaintiff surrendered possession of the horse to him; but subsequently, and before this action was brought, demanded it of the defendant and the defendant refused to give it up to him.

There was no evidence of any title to the horse in Bachelder, except as derived from Dakin. As to the question whether Bachelder did derive title from Dakin, the defendant, called as a witness by his counsel, testified, without objection, that he saw on the records of the town clerk in Temple a record of a bill of sale or conveyance of the horse in controversy from Dakin to Bachelder.

The defendant offered in evidence declarations of Dakin, that he did not own the horse, but that it belonged to Ma-

comber, and was to remain his until paid for. This testimony was excluded by the Court, MAY, J., presiding.

There was evidence as to other acts of Dakin and Bachelder, tending to show ownership of the horse, and instructions were given by the Court as to the rights of the parties under such circumstances as the evidence tended to show, and also, as to the measure of damages. These are omitted, as the decision was not affected by them.

The verdict was for the plaintiff, and the defendant filed exceptions to the ruling of the Judge.

*J. S. Abbott*, in support of the exceptions, argued that the declarations of Dakin, touching his ownership and title, were wrongfully excluded. That such declarations of the vendor, under whom the plaintiff claims title, while said vendor was in possession of the horse, should have been received, has been often settled. On account of the exclusion of this testimony, the verdict should be set aside.

The counsel proceeded to argue other points, but it is not important to report them, as the case turned on the single point of the exclusion of the evidence offered.

*H. L. Whitcomb, contra.*

The questions proposed to Dakin were properly excluded by the Court:—1st, because they were leading, and suggested the answer to the witness;—2d, because they were the declarations of third persons, which in all such cases are excluded, for various reasons. 1 Greenl. Ev., § 124.

It is true that, under certain circumstances, the declarations of the assignor of property, made *while he was the owner of the property*, may be given in testimony to defeat the title of those claiming under him; but, if such declarations were made after the assignment by him of said property, they are clearly inadmissible. *Hatch* v. *Dennis*, 10 Maine, 244.

In *Holt* v. *Walker*, 26 Maine, 107, the Court expressly say, that the " declarations of a person while in possession as the *owner* of personal property, may be received to affect

the title of those claiming under him; but if, at the time of making such declarations, he has parted with his interest, it is otherwise." The property, at the time of making the declarations, must not only be in the possession of the one making them, but he must have a "complete and entire control over it, as *his property.*" *Russell* v. *Doyle,* 15 Maine, 112; 1 Greenl. Ev., § 190.

There are many cases reported, in this and other States, where the declarations of the payee of a negotiable note, made while the interest in said note was in him, are admissible evidence to be given in a suit by the indorsee against the maker; but, if the property in said note is not in the payee at the time, such declarations should be excluded. *Russell* v. *Doyle,* before cited.

In the case at bar, it was shown by the plaintiff, (if such was proper testimony,) that the horse was conveyed to Bachelder by Dakin, by a written bill of sale, properly recorded in the town clerk's office in Temple. After said conveyance, Dakin might have been permitted by Bachelder to retain the possession of the horse for a time; but that would not make his declarations admissible in regard to the purchase by him of the defendant, as all the cases before cited show.

But this rule applies only where there is an identity of interest between the assignor and assignee; and such identity is deemed to exist, where the assignee has acquired a title with actual notice of the true state of the title of the assignor, as qualified by the admissions in question, or where he has purchased a title already stale, or otherwise infected with circumstances of suspicion. 1 Greenl. Ev., § 190, and cases there referred to.

In the same section, the author says that "the declarations of a former holder of a promissory note negotiated before it was due, showing that it was given without consideration, though such declarations were made while he held the note, are not admissible against the indorsee;" for the rights of an innocent person holding under a good title are not to be cut down by the statement of a former holder, who, through fear

that his horse might be attached by his creditors, might have been induced to deny his title when interrogated in relation to it.

In this case, if the title which the plaintiff derived or intended to derive from Dakin was defective, the case shows no such fact, neither did the evidence at the trial show it; and consequently, the rule does not apply, unless the plaintiff had actual notice of the state of the assignor's title, or took the property under circumstances calculated to raise suspicion, so that the rule of *caveat emptor* would apply.

Another reason, which clearly excludes these declarations, is, that they were made after Dakin had parted with his real beneficial title in the horse to Bachelder. The case clearly shows, by implication, that all these statements which the defendant attempted to draw out of witnesses, as having been made by Dakin in disparagement of his title, were so made (if at all) after he had sold the horse to Bachelder, though he might have had the naked possession at the time of his conversation with Pease; for he then stated he did not own the horse, meaning that he had sold it to Bachelder. *Dennison* v. *Benner*, 41 Maine, 332; remark of C. J. SHEPLEY, in *Fisher* v. *True*, 38 Maine, 537.

If the owner of property does make statements disparaging his title, in order to deter his creditors from attaching it, I am unable to discover any good rule why such declarations should be admitted to prejudice the title of his assignee, who claims under no other title than that derived from such declarant.

If Dakin had not parted with his interest, at the time of making the declarations attempted to be proved, the burden was upon the defendant to show that fact; for the general rule is that all declarations of third persons are inadmissible; and, if a party wishes to avail himself of an exception to that rule, he should first prove all facts which entitle him to its benefit.

The opinion of the Court was drawn up by

DAVIS, J.—This is an action of trover for a horse. It was admitted that the defendant owned the horse until August, 1858, when he sold him, absolutely, or conditionally, to Dakin. The defendant claims that the sale was on the condition that the horse should remain his property until paid for. Not having received his pay, he took the horse from the plaintiff.

Dakin transferred the horse to Bachelder, probably by a mortgage bill of sale, as it appears that it was recorded, and Dakin still retained possession. The case does not show *how long* he retained possession, nor in what way, or for what consideration, the horse afterwards came into the possession of Bachelder. But the plaintiff purchased him of Bachelder, in October, 1858. Nor can there be any doubt, though the counsel for the plaintiff disclaimed it at the trial, that whatever title Bachelder had was acquired from Dakin.

In order to prove that the sale to Dakin was a conditional one, and that the horse was to remain his (the defendant's) property until paid for, the defendant offered to prove the declarations of Dakin to that effect while the horse was in his possession. This evidence was excluded by the Court.

The counsel for the plaintiff contends that it was properly excluded, because Dakin had transferred his interest to Bachelder, and, therefore, though in possession, was not the *owner*. But the case does not show *the date* of the bill of sale to Bachelder. It was for *the plaintiff* to prove that it was given *before* the admissions of Dakin, if he would have them excluded.

And, even if the bill of sale was given before the admissions, that did not render them inadmissible, if it was a *mortgage*. The only test as to the admissibility of such declarations, made by a vendor while the property is in his possession, is that of a *subsisting interest therein*, so that the admissions are made against interest. A mortgager of chattels has such an interest in the mortgaged property, that his declarations disparaging his original title may be proved by one who claims title against him and his vendee.

---

It is suggested that the declarations of Dakin were made in order to prevent his creditors from attaching the horse. But that was a matter entirely for the jury.

*Exceptions sustained.*
*New trial granted.*

TENNEY, C. J., and APPLETON, CUTTING, GOODENOW, and KENT, JJ., concurred.

